```
         IN THE UNITED STATES DISTRICT COURT FOR THE
                 EASTERN DISTRICT OF VIRGINIA

                       Alexandria Division


UNITED STATES,                   )
                                 )
        v.                       )
                                 )
ROBERT C. FENN,                  )   1:12cr510 (JCC)
                                 )
                                 )
   Defendant.                    )
```

### M E M O R A N D U M   O P I N I O N

This matter is before the Court on Defendant Robert Fenn's ("Defendant") Motion for New Trial ("Motion"). [Dkt. 93.] For the following reasons, the Court will deny Defendant's Motion.

## I.  Background

On December 6, 2012, a grand jury in the Eastern District of Virginia returned a two-count indictment against Defendant, charging him with receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2) (Count I), and possession of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B) (Count II). [Dkt. 1.] On December 14, 2012, Defendant waived formal arraignment, entered a plea of not guilty, and demanded a jury trial. Following this plea, Defendant filed a motion to suppress certain statements, which this Court denied on January 22, 2013. [Dkts. 17-18.]

The Court conducted a two-day jury trial on April 2 and 3, 2013. Following the presentation of the Government's case in chief, at a bench conference on April 2, 2013, Defendant made a Rule 29 motion for judgment of acquittal, which this Court denied. [Dkt. 46.] Following the presentation of his defense, Defendant renewed that motion at a bench conference on April 3, 2013, and this Court again denied the motion. [Dkt. 47.] On April 3, 2013, the jury found Defendant guilty beyond a reasonable doubt for Counts I and II. [Dkts. 47, 49.]

On April 17, 2013, Defendant filed his first motion for new trial. [Dkt. 51.] The Government filed its opposition on April 29, 2013. [Dkt. 54.] On May 9, 2013, the Court denied Defendant's first motion for new trial. [Dkts. 61-62.] On June 21, 2013, the Court sentenced Defendant to serve a term of 120 months' imprisonment as to each Count, with the sentences to run concurrently. [Dkt. 79.] On June 26, 2013, Defendant filed a notice of appeal with the United States Court of Appeals for the Fourth Circuit. [Dkt. 84.]

On February 3, 2014, Defendant filed this motion for new trial based on newly discovered evidence and accompanying memorandum. [Dkts. 93, 96.] On February 4, 2014, the Fourth Circuit affirmed this Court's order denying Defendant's motion to suppress and the judgment after trial. [Dkts. 94-95.] On February 11, 2014, Defendant filed a supplementary memorandum

2

regarding his motion for new trial. [Dkt. 97.] The Government filed its opposition on February 14, 2014. [Dkt. 98.]

Defendant's Motion is now before the Court.

## II.  Standard of Review

Federal Rule of Criminal Procedure 33 provides, in relevant part, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). Whether to grant or deny a motion for new trial rests within the broad discretion of the district court. *See United States v. Smith,* 451 F.3d 209, 216–17 (4th Cir. 2006). The Fourth Circuit has instructed, "a trial court should exercise its discretion to award a new trial sparingly, and a jury verdict is not to be overturned except in the rare circumstance when the evidence 'weighs heavily' against it." *Id.* (citations omitted).

In determining whether to grant or deny a motion for new trial on grounds of newly discovered evidence, the Fourth Circuit uses a five-part test:

> (i) is the evidence, in fact, newly discovered; (ii) are facts alleged from which the court may infer due diligence on the part of the movant; (iii) is the evidence relied upon not merely cumulative or impeaching; (iv) is the evidence material to the issues involved; and (v) would the evidence probably result in acquittal at a new trial?

*United States v. Chavis*, 880 F.2d 788, 793 (4th Cir. 1989). "Unless the answer to each of these inquiries is affirmative, a new trial is not appropriate." *Id.*

### III. Analysis

Defendant moves for a new trial based upon allegations that his father William Fenn sexually abused his stepdaughters from a previous marriage. Defendant argues that this evidence of sexual abuse on the part of William Fenn makes it more likely that William Fenn, not Defendant, was in possession of the child pornography at issue in this case.

On July 8, 2013, Catherine Fenn, Defendant's mother, received a call from Jeanene Milanak ("Milanak"), William Fenn's former stepdaughter. (Def. Mem. at 3.) During this call, Milanak described "acts of sexual abuse inflicted upon her by William Fenn when she was a child." (*Id.*) Based upon Jeanene Milanak's call, Defendant employed an investigator who spoke to two of William Fenn's other stepdaughters – Jadell McPherson ("McPherson") and Adena Seitz ("Seitz"). Both McPherson and Seitz also described incidents of sexual abuse by William Fenn during the time that he was married to their mother, Shirley Minter ("Minter").

According to Minter, her daughters complained about William Fenn's sexual abuse and were interviewed by Child Protective Services. (Def. Mem. at 4.) William Fenn was not

4

charged criminally, but an order was entered requiring that another adult be in the home with William when the girls were present. (*Id.*)

Defendant states that Catherine Fenn had heard of the allegations that William Fenn had sexually abused his stepdaughters, but that she did not know whether these allegations were true. (Def. Mem. at 4 n.6.) Before trial, Catherine Fenn mentioned these allegations to Defendant's trial attorney. Defendant asserts that before his conviction, he had no knowledge that his father had sexually abused children.

Having reviewed the evidence regarding William Fenn's sexual abuse submitted to the Court and heard testimony from Jeanene Milanak, the Court finds that the interests of justice do not require a new trial. William Fenn's prior acts of molestation do not entitle Defendant to a new trial on the issue of receipt and possession of child pornography.

A. Newly Discovered / The Exercise of Diligence

The first element of the *Chavis* test is "whether the evidence is, 'in fact newly discovered.'" *United States v. Fulcher*, 250 F.3d 244, 249 (4th Cir. 2001) (quoting *United States v. Custis*, 988 F.2d 1355, 1359 (4th Cir. 1989)). Newly discovered evidence is that which is not in a defendant's possession "prior to or during trial." *Id.*

5

On the facts presented during the evidentiary hearing, the Court finds that Defendant satisfies the first prong of the *Chavis* test. It is undisputed that Defendant did not have knowledge of his father's sexual abuse of children prior to or during the trial. His mother, Catherine Fenn, was aware of the allegations of sexual abuse against William Fenn. As Defendant acknowledges, shortly before trial, Catherine Fenn mentioned the "rumors" of sexual abuse to Defendant's trial counsel, William Rhyne ("Rhyne"). (Def. Mem. at 4 n.6.) According to Defendant, Catherine Fenn raised this topic because "the government had initially claimed no pornography had been found on William Fenn's computer." (*Id.*) "Catherine contacted Robert's attorney to express her skepticism and request and independent examination of the computer." (*Id.*) Based upon Rhyne's awareness of the rumors of sexual abuse, the Government contends that Defendant has not met his burden of showing that this evidence was newly discovered.

The Court finds, however, that based on the testimony of Defendant and his attorney, this information was not previously known. Rhyne testified that prior to or during the trial he had not received any of the information contained in the witness statements from Milanak, McPherson, and Seitz. Rhyne testified that he had been "given rumors, no factual information about the nature of the accusations, and what was

being said by way of accusation." Defendant, likewise, testified that he was not aware that allegations of sexual abuse had ever been made against his father; he learned of this information only after his sentencing. Thus, this information was not previously in the possession of Defendant or his trial counsel.

The second element of the *Chavis* test is whether there "are facts alleged 'from which the court may infer diligence on the part of the movant.'" *Fulcher*, 250 F.3d at 250 (quoting *Custis*, 998 F.2d at 1359). A defendant must allege "facts from which the court may infer that he attempted to obtain the evidence prior to the trial." *United States v. Blackwell*, No. 6:12-CR-201-1F, 2013 WL 6504731, at *8 (E.D.N.C. Dec. 11, 2013). "'Diligence' means ordinary diligence, not the highest degree thereof; and diligence is usually determined by taking into account the composite knowledge of the defendant and his counsel." *United States v. Lawhorne*, 29 F. Supp. 2d 292, 305 (E.D. Va. 1998).

Likewise, the Court finds that Defendant has met his burden on the second *Chavis* prong. At the evidentiary hearing, Rhyne testified that while he knew the names of William Fenn's daughters, but did not know "any contact information on where any of the step-daughters currently were residing." Based on his conversations with Catherine Fenn, Rhyne took steps to

develop the evidence showing that William Fenn was in possession of suspected child pornography. Rhyne did not have or develop the means to obtain the evidence at issue here because, as he testified at the hearing, he "did not know the nature of the allegations, specifically what they were claiming, how many of them were claiming it and when they were claiming something happened." Rhyne was only in possession of "rumors" – not any concrete facts. Ordinary diligence in this case did not require further investigation of mere rumors. William Fenn's stepdaughters came forward to disclose the sexual abuse they suffered only after Defendant's conviction. At this point, the evidence was duly investigated and brought to the attention of the Court. Therefore, there is sufficient evidence of diligence on the part of trial counsel for the Court to conclude that Defendant meets this prong.

    B.    <u>Cumulative or Impeaching</u>

The third element of *Chavis* is whether the newly discovered evidence is "not merely cumulative or impeaching." *Fulcher*, 250 F.3d at 250 (citations omitted). As the Fourth Circuit explained in *Fulcher*, for evidence to be cumulative for purposes of Rule 33, "it must be 'additional evidence to that which was presented at trial as to a fact.'" *Id.* (quoting *United States v. White,* 972 F.2d 16, 20 (2d Cir. 1992)). Evidence is not cumulative unless "it adds very little to the

8

probative force of the other evidence in the case so that if it were admitted its contribution to the determination of truth would be out-weighed by its contribution to the length of trial." *Fulcher*, 250 F.3d at 250 (quoting *United States v. Kizeart*, 102 F.3d 320, 325 (7th Cir. 1996)).

The Government argues that evidence of William Fenn's sexual abuse of children is merely cumulative. The Government contends that because the jury was presented with direct evidence of William Fenn's actual possession of child pornography, further evidence of his "sexual interest in children" is irrelevant. (Gov't Opp'n at 4.) As a general matter, the Government's argument concerning the evidence of William Fenn's possession of child pornography is well taken; as discussed below, this fact strongly suggests that this newly discovered evidence would not alter the jury's verdict. The Court finds, however, that under the definition of "cumulative" accepted by the Fourth Circuit in this context, the Government's argument is misplaced.

At trial, the jury was presented with clear evidence that William Fenn was in possession of child pornography. It was not, however, presented with any evidence of sexual abuse or misconduct by William Fenn. To be sure, this newly discovered evidence would be used to advance the inference that because William Fenn had a sexual interest in children, he would be more

9

likely than Defendant to have been in possession of the images at issue.  This does not make such evidence "cumulative."  Evidence of William Fenn's sexual abuse would not be "outweighed by its contribution to the length of trial" because no other evidence of William Fenn's abuse of children was admitted.  *Fulcher*, 250 F.3d at 250.  Additionally, because William Fenn did not testify at trial, this evidence is not impeachment evidence.

      C.    <u>Materiality</u>

The fourth element of the *Chavis* test is whether the evidence would be "material to the issues involved."  *United States v. Moore*, 709 F.3d 287, 293 (4th Cir. 2013).  Defendant argues that "evidence that William Fenn molested girls of the same appearance as those depicted in the child pornography is material because it establishes William Fenn, more so than Robert, as someone not only likely to be aroused by child pornography, but as one willing to commit criminal acts to satisfy his deviant desires."  (Def. Mem. at 7-8.)  As a general matter, evidence that goes to whether another individual committed the acts for which Defendant was convicted is material.  *See Moore*, 709 F.3d at 294 ("evidence bearing on the identification of the carjacker was undoubtedly material" where the case, at its core, was about the carjacker's identity); *United States v. Piazza,* 647 F.3d 559, 569 (5th Cir. 2011)

(agreeing that "evidence is certainly material as it goes to whether another person committed the acts of which the jury found [defendant] guilty").

In the instant case, Defendant seeks to offer evidence of William Fenn's sexual abuse pursuant to Federal Rule of Evidence 404(b). Under Rule 404(b), evidence of a person's crimes, wrongs or other acts may be admissible to prove "motive, opportunity, intent, preparation, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). "Such evidence can be admitted under Rule 404(b) when, inter alia, its probative value is not substantially outweighed by its prejudicial nature under the balancing test of Federal Rule of Evidence 403." *United States v. Myers*, 589 F.3d 117, 124 (4th Cir. 2009).[1] Where, as here, the accused seeks to use Rule 404(b) evidence to exonerate himself, courts have labeled such evidence "reverse 404(b)." *United States v. Rubio*, No. 95-5421, 1996 WL 329630, at *3 (4th Cir. June 17, 1996). "Reverse 404(b) evidence is sufficiently related to the offense only if 'it tends, alone or with other evidence to negate [the accused's]

---

[1] The Fourth Circuit has "articulated a four-prong test of admissibility for prior-act evidence: (1) the prior-act evidence must be relevant to an issue other than character, such as intent; (2) it must be necessary to prove an element of the crime charged; (3) it must be reliable; and (4) as required by Federal Rule of Evidence 403, its probative value must be 'substantially outweighed' by its prejudicial nature." *United States v. Queen*, 132 F.3d 991, 996 (4th Cir. 1997).

11

guilt of the crime charged against him.'"  *Id.*  (citations omitted).

Whether these prior acts are too dissimilar and attenuated in time from the instant offense to be material is a very close question.  William Fenn's alleged acts of molestation occurred when the victims were children.  One victim estimated that the abuse occurred when she was 10 or 11 years old, (Seitz Witness Statement [Dkt. 93-4]), and another victim estimates that she was 16 years old.  (McPherson Witness Statement [Dkt. 91-1] at 2.)  Based on the dates of birth provided by Defendant's private investigator, these acts occurred more than 40 years ago.  (Gov't Opp'n at 9.)  Defendant cites to *United States v. Beahm*, 664 F.2d 414 (4th Cir. 1981) in support of his argument that evidence of past sexual abuse would be relevant to show intent, motive and identity in the instant case.  (Def. Mem. at 9.)  In *Beahm,* however, the past acts of sexual misconduct occurred three years prior to the offenses charged. *Beahm*, 664 F.2d at 416.

Indeed, a time lapse of 40 years is longer than the time lapses the Fourth Circuit has found acceptable in similar cases.  In *United States v. Rice*, 347 F. App'x 904, 905 (4th Cir. 2009), the court found that evidence of molestation activity was admissible in a prosecution for possession of child pornography where the defendant had molested his nephew between

12

10 and 18 years prior. *Rice*, 347 F. App'x at 905. Likewise, in *United States v. Kelly*, the Fourth Circuit found that a 22 year-old conviction for attempted rape of a 12 year-old was admissible in a prosecution for traveling in interstate commerce for the purpose of engaging in illicit sexual conduct with a 12 year-old. *Kelly*, 510 F.3d 433, 437 (4th Cir. 2007). Here, the time lapse between William Fenn's sexual abuse and the instant offense is over 40 years.

Furthermore, the factual nexus between William Fenn's past acts and the present offense of possessing child pornography is not as close as in *Rice* or *Kelly*. In *Rice,* the Fourth Circuit noted that "though there were some differences between the previous molestation activity and the current charges of child pornography," the prior offenses included "showing the nephew child pornography, as well as taking pictures of the nephew's genitalia." *Rice*, 347 F. App'x at 907. In *Kelly*, the court noted that the similarity between attempted rape of a 12 year-old and traveling for purposes of engaging in sexual conduct with a 12 year-old was "striking." *Kelly*, 510 F.3d at 437. Here, by contrast, while both offenses involve the exploitation of a child, there are some differences between the two acts. As the Government notes, there are no allegations that William Fenn showed pornographic content to his stepdaughters or took pictures of them. (Gov't Opp'n at 9.)

13

One victim specifically states that William never took pictures of her or exposed her to pornographic material. (McPherson Witness Statement at 2.)

On the other hand, as the court recognized in both *Rice* and *Kelly*, this type of information is highly probative because it tends to prove a "sexual attraction towards children." *Rice*, 347 F. App'x at 904. As the court noted in *United States v. Wellman*, "though possession of child pornography is different from sexual abuse of a child, each involved exploitation of a child." *United States v. Wellman*, No. 1:08cr43, 2009 WL 159301, at *5 (S.D W. Va. Jan. 20, 2009).

On the question of temporal proximity, 40 years is not an unreasonable lapse in time, given the nature of the offenses at issue. While this case does not fall under Rule 414 – which allows "for the admission of evidence of other molestation offense committed by the *defendant*" – the legislative history of that rule is instructive here. *Rice*, 347 F. App'x at 905 (emphasis added).[2] When enacting Rule 414, Congress "explicitly rejected imposing any time limit on prior sex offense evidence." *Wellman*, 2009 WL 159301, at *4. This reflects Congressional judgment that in child molestation cases, a history of similar

---

[2] Rule 414 of the Federal Rules of Evidence provides: "In a criminal case in which the defendant is accused of an offense of child molestation, evidence of the defendant's commission of another offense or offenses of child molestation is admissible and may be considered for its bearing on any matter to which it is relevant." Fed. R. Evid. 414(a). This rule concerns evidence of extrinsic offenses of a "defendant," not a non-party as in this case.

14

acts is "exceptionally probative because it shows an unusual disposition . . . that simply does not exist in ordinary people." *Rivera v. Rivera*, 262 F. Supp. 2d 1217, 1226 (D. Kan. 2003) (citations omitted). Moreover, while 40 years is longer than the time periods in *Rice* and *Kelly* – 10 to 18 years and 22 years respectively - neither case indicated that longer time lapses would be impermissible. Accordingly, the Court finds that William Fenn's prior acts of sexual abuse of children are sufficiently similar in time and nature to be material to the issues involved in this case. Specifically, this evidence would go to whether William Fenn, not Defendant, was in possession of child pornography.

        D.   <u>The Probability of Acquittal</u>

The fifth element of *Chavis* is whether the evidence probably would result in an acquittal at a new trial. Based on the strength of the evidence against Defendant, the Court is unable to find that the evidence of William Fenn's alleged sexual abuse would likely result in this disposition. Thus, while Defendant has produced sufficient evidence on the first four *Chavis* prongs, his motion for a new trial ultimately fails because this evidence would be unlikely to produce an acquittal.

Defendant seeks to offer evidence of William Fenn's sexual abuse of his stepdaughters for the proposition that he was more likely than Defendant to have had child pornography on

15

his computer. However, at trial the jury was, in fact, presented with credible evidence that a computer belonging to William Fenn contained child pornography. (Gov't Opp'n at 4.) Special Agent David Nelson testified that child pornography was found on a Toshiba laptop. (Trial Tr. [Dkt. 75] 100:20-21.) The Toshiba laptop had a "user account that was a form of William Fenn." (Trial Tr. 100:25.) Both the Government and Defendant discussed the child pornography found on William Fenn's computer in their closing arguments. (Trial Tr. 301:13-15; 318:22-25.) Thus, evidence that supports the inference that William Fenn is likely to be interested in child pornography is not likely to lead to an acquittal; the jury was already presented with direct evidence that William Fenn *did* view child pornography. Nevertheless, the jury found beyond a reasonable doubt that Defendant had received and continued to possess images of child pornography.

The jury's verdict was amply supported by the evidence. The images attributed to Defendant were found on an Acer desktop computer. (Trial Tr. 70:5-7.) Special Agent Nelson testified that over 1,300 images of suspected child pornography and 173 videos of suspected child pornography were found on the Acer computer. (Trial Tr. 70:8-11.) These images were found in an account folder labeled "Trebor." (Trial Tr. 70:14-17.) Defendant told law enforcement that "Trebor" is his

16

name spelled backwards. (Joint Appendix ("J.A.") 86.) Special Agent Nelson further testified that within the Trebor accounts folder structure, there "is another folder called 62, and almost all of the child pornography was found in that 62 folder or subsequent subfolders of that folder." (Trial Tr. 70:17-20.) The 62 and 626 files are the same ones that Defendant told Detective John Spata of the Fairfax County Police Department he used to store his Hentai (sexual cartoon images). (J.A. 119-121.)

In addition to presenting evidence that Defendant stored child pornography in the same folders he admitted to using to store his Hentai images, the Government produced evidence at trial showing that other members of the Fenn household were not responsible for the images. (Gov't Opp'n at 11.) Charts detailing the downloading or viewing activities of the members of the Fenn residence rule out the possibility that William Fenn was accessing child pornography on Defendant's computer. These charts show nearly simultaneous computer usage by William and Defendant during the time that these images were viewed. (*See* Gov't Ex. 29A.)

Additionally, another device belonging to Defendant was also found to contain images of child pornography. Special Agent Nelson testified that a Western Digital loose hard drive was found in Defendant's bedroom. (Trial Tr. 113:12-14.) The

17

Western Digital loose hard drive contained a user account "Trebor." (Trial Tr. 114:11-12.) Under that user account, both Hentai and suspected child pornography were found. (Trial Tr. 114:13-17.)

Finally, both Defendant and William Fenn could be responsible for illegal images under the Government's theory; possession by William Fenn and Defendant were not presented as mutually exclusive. Evidence of William Fenn's acts of sexual abuse might make a jury further inclined to believe that William Fenn possessed child pornography, but this evidence does not make it any less likely that Defendant was also in possession of illegal images.

Accordingly, while Defendant has made a sufficient showing on prongs one through four of the *Chavis* test, his motion must be denied for failure to meet prong five.

### IV. Conclusion

For the foregoing reasons, the Court will deny Defendant's Motion.

An appropriate Order will issue.

April 3, 2014  
Alexandria, Virginia

/s/  
James C. Cacheris  
UNITED STATES DISTRICT COURT JUDGE