IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| ROBERT FENN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:12-cr-510 |
| | ) | 1:15-cv-578 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Petitioner Robert Fenn's motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence. [Dkt. 121.] A jury convicted Petitioner of one count each of receipt of child pornography and possession of child pornography. Petitioner's direct appeal was unsuccessful, as were two motions for a new trial. *United States v. Fenn*, 554 F. App'x 133 (4th Cir. 2014); *United States v. Fenn*, No. 1:12-cr-510, 2014 WL 1338672 (E.D. Va. Apr. 3, 2014), *aff'd* 584 F. App'x 114 (4th Cir. 2014). On May 4, 2015, Petitioner filed the present motion arguing that he received ineffective assistance of counsel at trial in violation of the Sixth Amendment of the United States Constitution. In response, the Court opened discovery and conducted an evidentiary hearing at which the parties presented stipulations, affidavits, exhibits, and oral argument. After careful consideration of the

1

trial record and the evidence and arguments presented in these proceedings, the Court will grant the petition.  Petitioner will be released from custody, unless, within 60 days, the Government initiates new trial proceedings against him.

## I.  Background

On the morning of June 12, 2012, Homeland Security Investigations ("HSI") executed a search warrant for child pornography related offenses at the Fenn residence in Fairfax County, Virginia.  Husband and wife William and Catherine Fenn[1] lived there with their two sons, John and Robert, who were all home when HSI arrived.  After a protective sweep, law enforcement officers interviewed the Fenn family members in an effort to identify who was responsible for the suspected child pornography activity.  Robert Fenn ("Petitioner") consented to an interview during which he told law enforcement he owned an Acer and a Powerspec desktop computer found in his room, but denied using those computers to access child pornography. Petitioner was then allowed to leave the house to attend work as a teacher at an elementary school in Fairfax, Virginia.

While Petitioner was at work, HSI conducted forensic previews of the computers found in the Fenn household.  These previews discovered suspected child pornography on at least one

---

[1]     Catherine, the mother, has since legally changed her name to Catherine Norris.  (Reply [Dkt. 144] at 2 n.1.)

device found in Petitioner's bedroom.  Knowing that Petitioner worked with children at an elementary school, law enforcement quickly went to the school to question Petitioner about the discovered images and videos.  During the second interview, Petitioner admitted to downloading Hentai images, which are legal to possess, and images of girls ages nine to fourteen. However, he denied any knowledge of child pornography.  When questioned about the file structures on his computers, Petitioner told the officers that he kept the Hentai images in folders labeled as "62" or "626" under a password-protected user account under the name "TREBOR" on his Acer and Powerspec computers.  Petitioner explained that TREBOR is the backwards spelling of his first name, Robert.

Forensic analysis was performed on all of the computer devices found in Petitioner's bedroom.  That analysis discovered child pornography or suspected child pornography on the Acer desktop, the Western Digital loose hard drive, and a Samsung loose hard drive that was also found in Petitioner's bedroom. The many images and videos of child pornography or suspected child pornography were discovered in the password-protected TREBOR user account saved within folders labeled "62" or "626" that also contained Hentai images.

In total, law enforcement officers seized approximately ten computers and eleven hard drives from the Fenn

household.  In addition to finding child pornography on the
computer and loose hard drives seized from Petitioner's bedroom,
forensic analysis also discovered suspected child pornography on
a computer belonging to Petitioner's brother and on a Toshiba
laptop belonging to the father, William Fenn ("the father").

At trial, the Government presented evidence that
Petitioner was responsible for receipt and possession of the
many images and videos of child pornography found on the Acer
computer seized from Petitioner's room.  As affirmative evidence
implicating Petitioner, the Government emphasized that the Acer
was seized from Petitioner's room, that the child pornography
was saved within Petitioner's password-protected user account,
and that the child pornography was saved within the folder that
Petitioner admitted to saving images of Hentai and young girls.
The Government also presented charts comparing the times of 231
child pornography downloads on the Acer desktop with times when
Petitioner's whereabouts were known.  In one particularly
compelling comparison, the charts showed that downloads did not
occur when Petitioner was out of state at a convention, but that
downloads resumed within an hour of his returning home.  (Tr.
154-155.)[2]  In sum, the Government's expert testified there was

---

[2]    Citations to "Tr." refer to the transcript of the two-day
jury trial on April 2 and April 3, 2013.  [Dkts. 69, 73-76.]

not a single time of download when Petitioner was known to be
out of the Fenn house.  (Tr. 155.)

The Government relied on the same charts to exclude
the possibility that the brother or the father was responsible
for the downloads on the Acer desktop computer.  The Government
produced evidence showing that the brother was known to be at
work on three occasions when child pornography downloads
occurred on the Acer desktop.  The charts also indicated that
the father was operating the Toshiba laptop computer or a
Powerspec computer in the basement at the same time that five
downloads occurred on the Acer desktop.

Petitioner's trial counsel sought to create reasonable
doubt as to who was responsible for the illegal activity on the
Acer by presenting evidence that the father likely downloaded
and viewed the child pornography.  To support this defense
theory, Petitioner testified that he kept the Acer desktop in
the basement of the Fenn household until only days before HSI
executed the search warrant.  The mother and Petitioner's friend
corroborated that the Acer was kept in the basement.  Trial
counsel also elicited testimony that the father spent
substantial time alone in the basement working with computers
and on his HAM radio, knew the password to the TREBOR account,
and had images of suspected child pornography within the thumb
cache folder of his Toshiba laptop.  Trial counsel relied

heavily on this evidence during his closing argument to shift
suspicion away from Petitioner and toward the father.

Trial counsel was unsuccessful in seeking to admit
additional testimony that would have substantially implicated
the father as the source of the downloads.  On the morning of
the second day of trial, trial counsel sought to question the
mother about an out-of-court statement the father made after
Petitioner's arrest.  (Tr. 220-222.)  The Government objected on
hearsay grounds.  The Court then held a bench conference at
which trial counsel proffered that the mother would testify that
on the day after Petitioner's arrest, the father told her and
Petitioner that he "had been downloading child pornography onto
computers."  (Tr. 220.)  Trial counsel sought to admit the
father's confession as a statement against interest.  (*Id.* at
221.)  Trial counsel, however, had not attempted to procedure
the father's appearance or testimony and the father lived in the
area local to the courthouse.  (*Id.*)  Thus, the Court concluded
that the father was not "unavailable" for purposes of Federal
Rule of Evidence 804(a) and sustained the hearsay objection.

After the two day trial, a jury convicted Petitioner
of one count each of possession of child pornography and receipt
of child pornography.  He was subsequently sentenced to 120
months incarceration on each count to run concurrently, followed
by a 20-year term of supervised release.

On April 17, 2013, Petitioner filed a motion for a new trial based on *Brady* violations.  The Court denied this motion on May 9, 2013.

The United States Court of Appeals for the Fourth Circuit denied Petitioner's direct appeal on February 4, 2014. *United States v. Fenn*, 554 F. App'x 133 (4th Cir. 2014).

On February 3, 2014, Petitioner filed his second motion for a new trial, this time based on newly discovered evidence that the father allegedly sexually abused his stepdaughters when they were the same age as the children depicted in the files found on the Acer desktop.  The Court denied the motion and the Fourth Circuit affirmed.  *United States v. Fenn*, No. 1:12-cr-510, 2014 WL 1338672 (E.D. Va. Apr. 3, 2014), *aff'd* 584 F. App'x 114 (4th Cir. 2014).

On May 4, 2015, Petitioner filed the present motion to vacate under 28 U.S.C. § 2255(a).  (Petition [Dkt. 121]; Memo. in Supp. [Dkt. 122].)  The motion argued that Petitioner's trial counsel provided constitutionally ineffective assistance in three ways: (1) failing to interview and subpoena the father to testify; (2) failing to reasonably pursue an independent forensic examination of the computers and hardware at issue in this case; and (3) failing to pursue and present evidence of partial alibi defenses.

On May 18, 2015, Petitioner moved to reopen discovery to view and inspect the Acer desktop, Toshiba laptop, Western Digital loose hard drive, and Samsung loose hard drive to determine whether an examination of these devices would have produced exculpatory evidence. (Mem. in Supp. of Discovery [Dkt. 131] at 4.) By memorandum opinion on June 23, 2015, the Court reopened discovery as to those devices after finding that the motion was "reasonably calculated to produce evidence material" to the petition. *Fenn v. United States*, No. 1:12-cr-510, 2015 WL 3868583, at *3 (E.D. Va. June 23, 2015).

After conducting discovery, Petitioner motioned for an evidentiary hearing to investigate his claims of ineffective assistance. The Government conceded that a limited hearing was necessary and the Court conducted such a hearing on February 4, 2016. (Gov't Sur-Reply [Dkt. 147] at 14.) At the hearing, both sides presented stipulations, exhibits, affidavits, and oral argument. Neither side presented witness testimony, although Petitioner was present and the Court afforded the opportunity to do so. After hearing argument on the evidence, the Court took the motion under advisement.

## II.   Standard of Review

A motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 allows a prisoner to challenge the legality of his sentence as being "imposed in violation of the

Constitution or laws of the United States."  28 U.S.C.

§ 2255(a).[3]  The petitioner bears the burden of demonstrating his

grounds for relief by a preponderance of the evidence.  *See Hall*

*v. United States*, 30 F. Supp. 2d 883, 889 (E.D. Va. 1998).

A claim of ineffective assistance of counsel is a

well-recognized basis for asserting a § 2255 motion.  *See United*

*States v. King*, 119 F.3d 290, 295 (4th Cir. 1997).  The

*Strickland* standard for evaluating that claim is also familiar,

requiring petitioner to prove (1) "counsel's representation fell

below an objective standard of reasonableness"; and (2) "there

is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have

been different."  *See Strickland v. Washington*, 466 U.S. 668,

694 (1984).

To establish deficient performance under the first

prong, a petitioner must demonstrate that his counsel "made

errors so serious that counsel was not functioning as the

'counsel' guaranteed . . . by the Sixth Amendment."  *Id.* at 687.

"Deficient performance is not merely below-average performance;

rather, the attorney's actions must fall below the wide range of

professionally competent performance."  *Griffin v. Warden, Md.*

*Correctional Adjustment Ctr.*, 970 F.2d 1355, 1357 (4th Cir.

---

[3]    The additional bases for relief under 28 U.S.C. § 2255(a)
are not relevant to this proceeding.

1992). When evaluating counsel's performance in retrospect, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. In assessing performance, a court must apply a "heavy measure of deference to counsel's judgments." *Id.* at 691.

The second prong requires a petitioner to affirmatively prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Keeping this standard in mind, the Court will now address Petitioner's three claims of ineffective assistance.

### III. Analysis

A.      Failure to Subpoena the Father to Testify at Trial

On the second day of trial, defense counsel called Petitioner's mother to testify. (*See* Tr. at 213-228.) During the direct examination, trial counsel sought to elicit the mother's testimony that, in the presence of her and Petitioner, the father admitted to "downloading child pornography onto computers." (*Id.* at 220; *see also* Norris Aff. [Dkt 159-9] ¶ 7; Robert Aff. [Dkt. 159-11] ¶ 20.) When the Government objected

10

to this hearsay evidence, trial counsel argued that the declaration was admissible as a statement against interest under the hearsay exception of Federal Rule of Evidence 804(b)(3). The Court sustained the objection after learning that trial counsel had not attempted to procure the father's attendance or testimony at trial. (Tr. 221); Fed. R. Evid. 804(a). Thus, the jury never heard testimony of the father's out-of-court admission that he had downloaded child pornography onto computers.

Petitioner now argues that trial counsel performed unreasonably by failing to attempt to secure the father's presence at trial and that this action prejudiced him by preventing the jury from hearing the father's out-of-court admission. As described below, the Court agrees.

### 1.        Deficient Performance

The deficient performance prong is satisfied in this case because trial counsel unreasonably failed to present exculpatory evidence at trial. As the Court of Appeals for the Fourth Circuit has noted, "[a]n attorney's failure to present available exculpatory evidence is ordinarily deficient, 'unless some cogent tactical or other consideration justified it.'" *Griffin*, 970 F.2d at 1358 (quoting *Washington v. Murray*, 952 F.2d 1472, 1476 (4th Cir. 1991)). Failing to present a witness, however, is neither unreasonable nor prejudicial if that witness

11

would not have led to the admission of exculpatory testimony. *See Sharpe v. Bell*, 593 F.3d 372, 383 (4th Cir. 2010) ("Nor did [the court] unreasonably apply *Strickland* in concluding that, since Highsmith's testimony was inadmissible, it was neither objectively unreasonable nor prejudicial to Sharpe's case to refrain from seeking its admission."). This follows from the principle that "[c]ounsel is not required to engage in the filing of futile motions." *Id.* (quoting *Moody v. Polk*, 408 F.3d 141, 151 (4th Cir. 2005)). Thus, both the reasonableness and prejudicial impact of trial counsel's failure to attempt to procure the father's testimony turns on whether that attempt would have led to the admission of exculpatory evidence.

Petitioner has not proven that attempting to procure the father's presence at trial would have led to exculpatory testimony *from the father*. It appears that if trial counsel called the father as a witness, the father would have refused to testify regarding the child pornography downloads at issue. During a recent interview, the father stated he would have asserted his Fifth Amendment right against self-incrimination instead of testifying. (*See* Hundley Interview [Dkt. 122-5] at 33.) Thus, there is no indication the father would have confessed to downloading child pornography if called as a witness.

Instead of arguing that the father's testimony would have been directly exculpatory, Petitioner contends that the father's invocation of his Fifth Amendment right would have allowed the mother to testify as to the father's prior out-of-court admission.  The Court agrees that the father's out-of-court statement would have been exculpatory and admissible under the Rule 804(b)(3) hearsay exception, thus making trial counsel's failure to attempt to procure the father's testimony unreasonable.

Rule 804(b)(3) permits an out-of-court statement to be admitted for the truth of the matter asserted when the declarant is unavailable and "a reasonable person in declarant's position would have made [the statement] only if the person believed it to be true because, when made, it . . . had so great a tendency . . . to expose the declarant to civil or criminal liability." Fed. R. Evid. 804(b)(3)(A).  When the statement is offered in a criminal case as one that "tends to expose the declarant to criminal liability," the statement must also be "supported by corroborating circumstances that clearly indicate its trustworthiness."  *Id.* 804(b)(3)(B).  Thus, "hearsay may be admitted under this exception if (1) the declarant is unavailable, (2) the statement is genuinely adverse to the declarant's penal interest, and (3) corroborating circumstances clearly indicate the trustworthiness of the statement."  *United*

*States v. Bumpass*, 60 F.3d 1099, 1102 (4th Cir. 1995).  The proponent of the evidence bears the "formidable burden" of satisfying these Rule 804(b)(3) requirements.  *Id.*

In this case, the first two elements of the Rule 804(b)(3) test are not disputed.  If the father had asserted his constitutional right against self-incrimination, he would have been unavailable for purposes of Rule 804(a)(1).  *See Bumpass*, 60 F.3d at 1102.  Additionally, the father's alleged statement was adverse to his penal interest.  The father allegedly told the mother and recently arrested Petitioner that he "had been downloading child pornography onto computers."[4]  (Tr. 220.)  This statement was adverse to his penal interest because it would expose him to criminal liability if either individual communicated the statement to the police, who all parties knew were actively investigating the crime.  *Bumpass*, 60 F.3d at 1102; *cf. United States v. Katsougrakis*, 715 F.2d 769, 775 (2d Cir. 1983) (finding statement to friend adverse to penal interest).

The third 804(b)(3) requirement—the existence of corroborating circumstances—is the contested issue in this

---

[4]    This statement is not privileged as a marital communication because the father made it in the presence of a third party. *See Pereira v. United States*, 347 U.S. 1, 6 (1954) ("Although marital communications are presumed to be confidential, that presumption may be overcome by proof of facts showing that they were not intended to be private.  The presence of a third party negatives the presumption of privacy.").

petition.  The corroborating circumstances need not "remove all doubt with respect to the hearsay statement." *United States v. Brainard*, 690 F.2d 1117, 1125 n.14 (4th Cir. 1982).  "Rather the rule requires only that the corroborating circumstances clearly indicate the trustworthiness of the statement." *Bumpass*, 60 F.3d at 1102.  The Fourth Circuit recognizes several factors that are relevant to the corroboration analysis, including "(1) whether the declarant had at the time of making the statement pled guilty or was still exposed to prosecution for making the statement, (2) the declarant's motive in making the statement and whether there was a reason for the declarant to lie, (3) whether the declarant repeated the statement and did so consistently, (4) the party or parties to whom the statement was made, (5) the relationship of the declarant to the accused, and (6) the nature and strength of independent evidence relevant to the conduct in question." *Id.*

Petitioner argues that the circumstances of the father's statement indicate trustworthiness because it was made to his wife and son, in their home, after the initial police search.  (Reply [Dkt. 144] at 7.)  As this was the first time police had contact with the Fenns regarding the computers, Petitioner contends that there was no time to fabricate the statement.  (*Id.*)  Additionally, the father repeatedly confessed

to downloading child pornography until the time when Petitioner was indicted.  (*Id.*; Norris Aff. ¶ 7; Robert Aff. ¶ 20.)

The Government, by contrast, argues that a statement made after Petitioner's arrest would not indicate trustworthiness.  (Gov't Sur-Reply at 16.)  At a hearing on this issue, the Government also impugned the mother's credibility, noting that she has "a lot of incentive to fabricate" because she has divorced the father since the time of Petitioner's arrest and because she does not want her son to remain incarcerated.  (Feb. 4, 2016 Evid. Hearing Tr. at 19.)

Both parties' arguments have merit.  On balance, however, the *Bumpass* factors clearly weigh in favor of finding the father's out-of-court statement corroborated.  The father was exposed to prosecution when he made this statement, as it was made the day after the initial search and months before Petitioner was indicted.  The closeness in time between the initial search and the alleged statement also indicates the father would have less time to fabricate a confession to protect his son.  The father's repeated denials to law enforcement also reduce the likelihood that his admission was an attempt to accept blame for his son.  Additionally, the fact that he repeatedly made the statements to Petitioner supports their veracity.  Perhaps most importantly, there is substantial evidence indicating that the father did download, or at least

view, child pornography on computers at the Fenn residence.  The evidence presented at trial to this effect includes the following: suspected child pornography was found in the thumb cache drive of the father's Toshiba laptop; the computer devices containing child pornography were kept in the basement where the father often worked alone during the times of illegal downloads; the father knew the TREBOR account password; and the father was not known to be outside the Fenn residence during the time of any of the 231 downloads on the Acer computer.  Those corroborating circumstances clearly indicate the trustworthiness of the father's out-of-court admission pursuant to Rule 804(b)(3).

The Government's argument that the mother is not a credible witness is misplaced and does not alter the Court's corroboration assessment.  The Government is correct that the mother has a clear motive to fabricate,[5] as does Petitioner.  The advisory commentary to Rule 804(b)(3), however, notes that "the credibility of the witness who relates the statement is not a proper factor for the court to consider in assessing corroborating circumstances."  Fed. R. Evid. 804(b)(3), 2010 Amendment Notes.  A court should not consider the in-court witness's credibility because a "jury is able to observe

---

[5]     The mother is no longer married to the father, William. (*See* Norris Aff. ¶ 1.)

firsthand the witness' demeanor and response to questions; it may assess without obstacle the credibility of the witness." *United States v. Katsougrakis*, 715 F.2d 769, 777 (2d Cir. 1983); *see also United States v. Seeley*, 892 F.2d 1, 3 (1st Cir. 1989) (same); *United States v. Satterfield*, 572 F.2d 687, 691 (9th 1978) ("To exclude a hearsay statement because of doubt that it was made is to exclude it not because of its hearsay nature but for some other reason."); 5 Jones on Evidence § 36:68 (7th ed.) ("[T]he judge must assume . . . that the witness is testifying truthfully and accurately, and assess the trustworthiness of the statement on that basis."). Thus, the issue of the mother's likely bias is best left for the jury to weigh.

In summary, the Court concludes that failing to procure the father's presence at trial was unreasonable because it would have led to the admission of exculpatory evidence through the 804(b)(3) hearsay exception. Namely, the father would have been unavailable due to asserting his right against self-incrimination, his statement was against his penal interest, and corroborating circumstances existed to clearly support the trustworthiness of the statement.

Trial counsel's contention that he strategically elected not to procure the father's testimony does not convince the Court of the reasonableness of that decision. (*See* Rhyne Aff. II [Dkt. 159-1].) In a recent affidavit, trial counsel

18

stated that he believed the defense case would be stronger by relying solely on evidence of the child pornography found on the father's computer rather than risk calling the father as a witness. (*Id.* ¶ 3.)  Trial counsel's explanation is not credible for several reasons.  First, trial counsel admitted that he never interviewed the father prior to trial.  (*Id.* ¶ 1.) Courts do not defer to strategies formed on a plainly unreasonable investigation of the facts, such as a failure to interview a critical witness.  *See Wiggins v. Smith*, 539 U.S. 510, 527 (2003); *Huffington v. Nuth*, 140 F.3d 572, 580 (4th Cir. 1998).  Second, trial counsel stated in his affidavit that he was "surprised" when the Government did not call the father as a witness and he expected the father to testify at trial.  (*See* Rhyne Aff. I [Dkt. 137-2] ¶ 1.)  Thus, trial counsel could not reasonably have relied on a strategy of implicating the father by circumstantial evidence free from the father's own testimony, as trial counsel admits he expected the father to testify as the Government's witness.  (*Id.*)  Thus, the Court cannot conclude that trial counsel relied on any reasonable strategy by not subpoenaing the father as a witness.

Having concluded that the father's out-of-court statement would have been admissible under a hearsay exception, the next question is whether the failure to present that statement at trial prejudiced Petitioner.  *See, e.g.*, *Grooms v.*

19

*Solem*, 923 F.2d 88, 91 (8th Cir. 1991) ("Prejudice can be shown by demonstrating that the uncalled alibi witnesses would have testified if called at trial and that their testimony would have supported Grooms' alibi.").

### 2.        **Prejudice**

There is a substantial likelihood that the outcome at trial would have been different if the mother testified that the father admitted he "had been downloading child pornography onto computers." *See Harrington v. Richter*, 562 U.S. 86, 112 (2011) (stating prejudice standard).

This confession would have gone to the central issue at trial with respect to both counts.  Because of stipulations, the primary issue of dispute for the receipt of child pornography count was whether it was Petitioner who knowingly received the files.  (*See* Tr. 293 (Government's closing argument).)  With respect to the possession count, the primary question was whether Petitioner knowingly possessed the files at issue.  (*See* Tr. 294 (Government's closing argument).) Testimony that someone other than Petitioner had downloaded pornography onto computers at the Fenn household, then, would have been highly relevant to the contested issues at trial.

Additionally, this confession would have directly substantiated Petitioner's theory of defense.  Trial counsel consistently sought to prove that the father was responsible for

the receipt and possession of the child pornography, not Petitioner.  He established this theme early in his opening statements.  (*See* Tr. 19 ("But you may think that the facts that are given to you in this trial are different, are otherwise, that the porn was put on the Acer at the time when the Acer was in the basement under the . . . direct control, of father William who, on father Williams' own other computers, had porn.").)  Trial counsel pursued this theory throughout trial by eliciting testimony about the father's access to Petitioner's Acer computer, about the suspected pornography found on the father's laptop, and about the minimal evidence ruling the father out as the culprit.  Trial counsel returned to this defense again in his closing, arguing "William is an alternate that shows that Robert is not guilty," among other similar statements.  (Tr. 307-309.)  There is a substantial likelihood that the admission of a confession from the father would have tied this theory of defense together and resulted in a different verdict at trial.

Lastly, the father's admission would have rebutted evidence that the Government presented to eliminate the father as a potential culprit.  The Government argued that the evidence pointing to the father was not persuasive, in part, because the child pornography on the father's Toshiba laptop was saved in a computer-generated thumb cache drive, whereas the images on the

Acer were saved in user-created folders.  (Tr. 66, 133, 174.)
In other words, the father did not download and intentionally
save the files on his computer, unlike the files on the Acer.
(Tr. 173.)  The Government emphasized the difference between the
father's Toshiba computer activity and the Acer activity at
closing argument as follows:  "You heard Special Agent Nelson's
testimony that the suspected child pornography found on the
computer associated with William Fenn was quite different.  It
was thumb cached.  That means no user saved the child
pornography to the computer or put it in a named folder."  (Tr.
301.)  Thus, an admission from the father that he had downloaded
child pornography onto computers, rather than only viewed, would
be a new and critical fact.  That admission would discredit the
Government's theory for distinguishing the father's computer
practices from those that resulted in the downloads on the Acer
and the hard drives.

     In sum, by failing to attempt to procure the father's
testimony, trial counsel prevented the jury from hearing
evidence of the father's highly exculpatory out-of-court
admission.  This evidence would have supported the defense
theory of the case and would have rebutted the Government's
evidence.  As the Government's case against Petitioner was based
primarily on circumstantial evidence and on a process of
eliminating the father and brother as alternate suspects, there

                              22

is a substantial likelihood that the outcome at trial would have been different had trial counsel sought to procure the father's testimony.  Accordingly, the Court will grant the petition.

B.      Failure to Conduct an Independent Forensic Computer Examination

As Petitioner's second claim of ineffective assistance, he argues that trial counsel conducted an unreasonable investigation into the possibility of retaining a computer forensic expert.  (Reply at 8.)  To determine whether this alleged deficient performance was prejudicial, the Court granted Petitioner's motion to reopen discovery of the Acer desktop, the Toshiba laptop, the Western Digital loose hard drive, and the Samsung hard drive.  After considering the results of that discovery, the Court finds that no prejudice resulted from trial counsel's failure to retain an independent forensic examiner to testify at trial.  Accordingly, even assuming *arguendo* that counsel's performance was deficient, no ineffective assistance resulted.

Petitioner's first argument for prejudice is that failing to secure an independent expert allowed the Government's witness, Special Agent Nelson, to testify without rebuttal that the suspected child pornography on the Toshiba laptop was different than the child pornography on the Acer.  (*See* Reply at 9.)  The independent forensic exam revealed that the thumb cache

23

images on the father's laptop were similar in age and gender to those discovered on the Acer.  Agent Nelson, however, did not testify that the images on the Toshiba were different in content from those saved on the Acer.  Instead, he testified that the images on the two computers were *saved* differently.  (*See* Tr. 177; 301.)  Thus, the information discovered by the independent examiner would not have presented new evidence to rebut Agent Nelson's testimony on this issue.

Petitioner's second argument for prejudice is that the independent examiner would have testified that the father's desktop computer web-browsing history contained many child-pornography-related search terms from 2004 and 2005.  (Reply at 10.)  Even if evidence of searches for "preteen chat" and "preteen flirt" six years before the events at issue was admissible under Rule 403 and 404(b), that evidence is cumulative of the evidence that suspected child pornography was discovered on the father's laptop.  Accordingly, trial counsel's failure to take steps to discover these search terms from 2004 and 2005 does not create any probability of a different outcome at trial.

Petitioner's last argument for prejudice on this issue is that the independent examiner discovered that the Toshiba laptop's browsing history is consistent with one user operating the Toshiba and the Acer at the same time.  (Reply at 3, 11.)

24

Testimony of this single-user theory was presented at trial, making this additional testimony cumulative and not a proper basis for finding prejudice. *See Everage v. Wright*, No. 1:13-cv-510 (JCC/JFA), 2014 WL 4471443, at *12 (E.D. Va. Sept. 9, 2014) (finding failure to discover duplicative evidence not prejudicial). On cross examination, Special Agent Nelson admitted that one person could have operated the Toshiba laptop and the Acer at the same time. Nelson testified "[c]ertainly you can start downloading something, and then if the download takes for a while, move to another computer." (Tr. 126.) After more questioning, Nelson again admitted that "certainly if you downloaded something that took a long time, then you can do something on another computer." (Tr. 128.) Additionally, even without conducting a forensic examination, trial counsel argued in closing that the timing between the activity on the Toshiba laptop and the Acer downloads was suspicious. (*See* Tr. 317-319.) Trial counsel emphasized that the laptop was portable and thus "could go to the basement and be used at the same time in the same place as the Acer desktop." (Tr. 317.) Trial counsel invited the jury to compare the Government's timing charts while deliberating and to note the closeness in time between activity on two of the father's computers. (Tr. 318.) In short, the jury considered several pieces of evidence indicating that the father could have operated the Toshiba at the same time as the

Acer.   More evidence circumstantially supporting this possibility does not create a reasonable probability of a different outcome at trial.   Thus, the Court concludes that trial counsel's failure to obtain an independent forensic examiner was not constitutionally ineffective assistance of counsel.

C.      Failure to Investigate and Present Partial Alibi Defenses

As Petitioner's last claim of ineffective assistance, he argues that Rhyne unreasonably failed to investigate financial records proving that Petitioner was outside of the house at the time some child pornography at issue was downloaded.   Even assuming Rhyne unreasonably failed to investigate, Petitioner cannot succeed on this claim because no prejudice resulted from the failure to investigate.

Petitioner has identified three records that he believes would have created a substantial likelihood of affecting the outcome at trial.   The first record is a receipt from a George Mason University parking garage showing that Petitioner arrived at the garage sometime between 1:46 and 2:45. Petitioner believes this provides an alibi for downloads that occurred at 1:45, 1:46, 1:48, and 1:51.   If this receipt was presented at trial, Petitioner states that he would have testified that he was not at home at the time of these

26

downloads, that he drove from his school to George Mason for a 2:40 doctor's appointment, and arrived at George Mason at 2:00. (Robert Aff. [Dkt. 159-11] ¶¶ 4-6.)

The second receipt is from a cash purchase at a fast food restaurant at 5:33 p.m. on a day when a download occurred at that house at 5:41 p.m.  The mother testified that it took her between six and seven minutes to drive from the restaurant to her home.  (Norris Aff. [Dkt. 159-9] ¶ 8.)  Petitioner stated in his affidavit, that he would "regularly" eat food at the restaurant and it would take him "at least fifteen minutes to eat the meal" he purchased that day.  (Robert Aff. ¶ 11.)

The last receipt is from a frozen custard purchase at 4:09 p.m. at a restaurant located ten to fifteen minutes from the Fenn household on a day when illegal downloads occurred at 4:37 and 4:52 p.m.  (Robert Aff. ¶¶ 14-16.)  Petitioner states that he likely spent fifteen minutes eating the dessert at the restaurant rather than attempt to drive with it, which would place him at the Fenn residence between 4:34 and 4:39 p.m.  (*Id.* ¶ 15.)

When considering these partial alibi defenses in light of the totality of the evidence before the jury, they do not create a reasonable probability of a different outcome at trial. *See Strickland*, 466 U.S. at 695 (requiring consideration of totality of circumstances).  Even if these alibi defenses were

27

ironclad, they would place Petitioner out of the house at the time of only six of the over-230 illegal downloads at issue in this case.  Other evidence before the jury showed that downloads ceased when Petitioner was out-of-town for a convention, but began an hour after he returned.  The jury would also consider that the downloads occurred on a computer that belonged to Petitioner, those files were saved in a folder where Petitioner admitted to saving hentai images, and the images were within Petitioner's password protected user account.  Thus, these receipts fail to explain a huge percentage of the illegal activity at issue or to discredit circumstantial evidence implicating Petitioner.

Furthermore, these alibis do not convincingly place Petitioner outside of the Fenn household at the time of downloads.  Several of the receipts could aggravate the case against Petitioner by demonstrating that he was in the area surrounding his home and capable of reaching the home by car in time to commit the downloads.  Accordingly, trial counsel's failure to discover and present these partial alibi defenses at trial was not prejudicial and does not support a claim for constitutionally ineffective assistance of counsel.

### IV.   Conclusion

For the above reasons, the Court will grant the Petition.  Petitioner shall be unconditionally released from

custody on the jury verdict entered April 3, 2013, unless,

within 60 days, the Government initiates new trial proceedings

against Petitioner.  An appropriate order will follow.


_____
                                                     /s/
March 23, 2016                        James C. Cacheris
Alexandria, Virginia         UNITED STATES DISTRICT COURT JUDGE